IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHAKIA C. HARRIS | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 19-cv-2598 |
| | * | |
| BROADWAY SERVICES, INC. | | |
| Defendant. | * | |

****** 

## MEMORANDUM

Pending before the court is a motion for summary judgment by defendant Broadway Services, Inc. ("BSI"). (ECF No. 30.) BSI moves for summary judgment as to all four of Plaintiff Shakia Harris's remaining claims for sex discrimination and retaliation, each brought under both the Maryland Fair Employment Practices Act and Title VII of the Civil Rights Act.[1] The motion has been fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons stated below, the court will grant BSI's motion with respect to all claims.

## BACKGROUND

### I. Ms. Harris's Employment and Claim of Harassment

Plaintiff Shakia Harris ("Ms. Harris") identifies as a woman and began working for Broadway Services, Inc. on December 4, 2017.[2] BSI employed Harris full-time, first as a janitor and then as a porter, at BSI's workplace locations in Annapolis (Account 435) and at Johns Hopkins Keswick campus (Account 514), where she was managed by Janine Theodore ("Ms. Theodore").

---

[1] Ms. Harris has withdrawn her claims for hostile work environment.
[2] BSI's interrogatory responses list Ms. Harris's employment as starting in June 2018. (ECF No. 33, Ex. E at 3.)

1

Ms. Harris alleges that, on September 1, 2018, Ms. Harris's male co-worker, Tyrell Walker ("Mr. Walker"), stated that her "butt looked fat" in work pants. (ECF No. 33, Ex. C at ¶ 4; Ex. F at ¶ 4; Ex. H ¶ 3.) Ms. Harris claims to have reported this to an area manager, James Peter Murry ("Mr. Murry"), who she believed did not take her concerns seriously. (*Id.,* Ex. F at ¶ 5.) Shortly after this incident, on September 11, 2018, Mr. Walker sent Ms. Harris a text message, stating that he wanted to "eat her ass."[3] Ms. Harris claims that she brought Mr. Walker's texts to the attention of BSI's Human Resources department, through Ms. Theodore, on September 17, 2018. (ECF No. 1 at 1; ECF No. 33, Ex. H ¶ 3.) BSI asserts that the company was never made aware of any sexual harassment claim by Ms. Harris until after her termination, despite Ms. Harris acknowledging in filings and pre-employment orientation documentation that she knew to direct complaints to the Human Resources Department. (ECF No. 33, Ex. E at 6, 13; ECF No. 30, Ex. 3 ¶ 6; Ex. L at 3; ECF No. 35 Ex. N ¶ 10.)[4] Because of an internal BSI investigation into his text conversation with Ms. Harris, Mr. Walker was demoted in December 2018, later voluntarily leaving BSI in September 2019. (ECF No. 30, Ex. 1 ¶ 20; ECF No. 33, Ex. E at 8.)

## II. Ms. Harris's Termination

Ms. Harris's last day of work for BSI was September 18, 2018 (ECF No. 30-11 at 2.) When Ms. Harris arrived at the Johns Hopkins Keswick worksite, she was informed by BSI's client that certain windows were insufficiently cleaned. (ECF 33-5 ¶ 13) While BSI and Ms. Harris dispute the derisiveness of her comment, both agree that Ms. Harris remarked on the

---

[3] Ms. Harris notes that Mr. Walker apologized for this incident over text on September 18, 2018. (ECF No. 33, Ex. A ¶ 12.)
[4] BSI additionally notes that they did not receive any formal complaint about sex discrimination from Ms. Harris, even during the reconsideration of her unemployment benefit denials, until she filed her EEOC complaint on March 26, 2019.

substandard quality of the work of the BSI employee who cleaned the window the night before. (ECF No. 33, Ex. A) Ms. Harris claims that she stated she asked: "Who cleaned the North lobby windows because they look amess [sic]," while BSI contends that her comments were "offensive" to other BSI employees. (*Id.*)

On the following day, September 19, 2018, Ms. Theodore, accompanied by Melvin Coleman ("Mr. Coleman"), a BSI supervisor at the Keswick location, called Ms. Harris into her office to speak about her conduct the day before. (ECF No. 30, Ex. 2 ¶ 5.) In her affidavit, Ms. Theodore states that she began the meeting by reminding Ms. Harris that she should not make offensive comments about her coworkers' performance, especially in front of them. (*Id.*) Ms. Theodore states that Ms. Harris began raising her voice and becoming progressively more "belligerent," to the point that Ms. Theodore informed Ms. Harris that she was suspended pending discharge for verbal abuse and insubordination. (ECF No. 30, Ex.2 ¶ 5; ECF No. 33, Ex. E at 7.)

Ms. Theodore and Mr. Coleman state that Ms. Harris returned to the room five minutes later and threw a fifty-five gallon plastic trashcan into her office, saying "here's your trashcan and your keys." (ECF No. 30, Ex. 2 ¶ 5; Ex. 3 ¶ 5.) Ms. Harris's suspension paperwork and notes attached to the September 19th incident report both mention the trashcan being thrown and Ms. Harris's re-entries into the office. (ECF No. 33, Ex. A; ECF No. 35, Ex. N ¶ 6.) Ms. Harris left, but then returned to the office a third time for paperwork explaining her suspension, only leaving after security was summoned. (*Id.*)

Ms. Harris denies becoming aggressive and reports that Ms. Theodore became angry with her after she spoke in her own defense regarding her comments about the window. (ECF 33, Ex. F ¶¶ 21-22.) She claims that she brought a trashcan with her to return to Ms. Theodore's office,

but that she stored it on the third floor as was customary in her duties as porter. (*Id.* ¶ 24.) Ms. Harris denies that she threw the trashcan and claims that she merely returned to the office to retrieve her keys and purse, which she forgot upon leaving for the day. (*Id.* ¶¶ 23-24.) Lastly, Ms. Harris asserts that the third trip to the office was on the advice of her attorney, to obtain a written rationale for her suspension. (*Id.*, Ex. A ¶ 24.)

On September 25, 2018, BSI formally terminated Ms. Harris's employment, citing "disorderly conduct" at the Keswick job site on September 19, 2018. (ECF No. 33, Ex. A; Ex. E at 5.)

### III.    Ms. Harris's Unemployment and Subsequent Actions by BSI

Upon her termination, Ms. Harris filed for unemployment insurance. In her initial claim, Ms. Harris did not allege that she believed she was fired in retaliation for reporting her claim of sexual harassment. (ECF No. 30-10). BSI contested her benefits and demanded a hearing in front of the Maryland Department of Labor, Licensing, and Regulation.

Ms. Harris did not attend the hearing on November 8, 2018. BSI presented the testimony of Ms. Theodore and Mr. Coleman, and the hearing officer disqualified Ms. Harris from receiving unemployment benefits until she became reemployed and earned wages that equaled at least twenty-five times her weekly benefit amount. (ECF No. 30, Ex. F at 1-3.) In a subsequent hearing on March 11, 2019, upon appeal by Ms. Harris, the hearing examiner upheld the previous decision and found Ms. Harris has "no viable explanation" for the misconduct to which BSI employees attested. (*Id.*, Ex. H.)

Ms. Harris appealed this decision to the Maryland Department of Labor Board of Appeals, which affirmed the denial of her benefits for her willful disregard of BSI's standards of behavior. (*Id.*, Ex. I.) Upon *de novo* review, the Board of Appeals affirmed the decision of the

4

hearing examiner, finding sufficient evidence in the record to conclude that Ms. Harris's termination was justified because of a willful disregard for BSI's interests. (*Id.*)

## PROCEDURAL HISTORY

This action arises from an EEOC complaint, digitally signed by Ms. Harris on March 26, 2019, alleging sex discrimination, sexual harassment, and retaliation. (*Id.*, Ex. A.) On July 11, 2019, the EEOC issued a right to sue notice and dismissed Ms. Harris's claims. (*Id.*, Ex. B.) Harris filed her complaint in this court on September 9, 2019. (ECF No. 1.)

Following discovery, BSI moved for summary judgment. In her response to BSI's motion for summary judgment, Ms. Harris dropped her hostile workplace environment claims (Counts II and V) under the MFEPA and Title VII (ECF No. 33 at 3.) BSI filed its reply, and the motion is ready for resolution.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam), and draw all reasonable

inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). The relevant inquiry is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (quoting *Anderson*, 477 U.S. at 255).

## DISCUSSION

For each of Ms. Harris's four remaining claims, the court is tasked with determining whether a genuine dispute as to any material fact exists that entitles the plaintiff to proceed to trial. Fed. R. Civ. P. 56(a). The court will conclude that, for each claim of retaliation and discrimination under the Maryland Fair Employment Practices Act ("MFEPA") and Title VII of the Civil Rights Act ("Title VII"), BSI is entitled to summary judgment.

As the statutory elements of both the sex discrimination and retaliation claims are functionally similar under the MFEPA and Title VII, the court will address first the evidentiary insufficiency of both Ms. Harris's discrimination claims, then her retaliation claims.

### I. *McDonnell-Douglas* Burden Shifting

There are two approaches plaintiffs may take to prove a Title VII or MFEPA violation. *Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 284 (4th Cir. 2004) (en banc) (*recognized in Foster v. Univ. of Maryland-E. Shore,* 787 F.3d 243, 249 (4th Cir. 2015), as *overruled on other grounds by Univ. of Texas Sw. Med. Ctr. v. Nassar,* 570 U.S. 338 (2013)).

The first approach is to offer direct evidence of discrimination under ordinary principles of proof. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).

Where there is no direct evidence of intentional discrimination, plaintiffs may proceed with disparate treatment claims under the second method: the burden-shifting approach described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Under this framework,

> (1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory.

*Id.* Here, Ms. Harris offers no direct proof of discrimination; so the court will examine her claims under the burden-shifting framework.

## II.   Claims I and IV: Sex Discrimination

Ms. Harris claims that she was subject to disparate treatment based on her sex, in violation of Title VII and the MFEPA. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* makes it an "unlawful employment practice" to "discriminate against any individual ... *because of* such individual's race, color, religion, sex, or national origin." § 2000e–2(a). Section 20 of the MFEPA similarly prohibits employers from "discharg[ing], or otherwise discriminat[ing] against any individual. . . because of: the individual's race, color, religion, sex, age, national origin. . ." Md. Code Ann. § 20-606(a)(1)(i) (2014 & Supp. 2019).

The Fourth Circuit has held that a Title VII plaintiff relying on indirect evidence may establish a prima facie case of discrimination by showing that "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse

7

employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Hill*, 354 F.3d at 285. The Fourth Circuit has employed the same elements to rule on claims brought under the MFEPA. *See Hartman v. University of Maryland at Baltimore*, 595 F. App'x 179, 181 (4th Cir. 2014).[5]

Generally, to establish this fourth element of the prima facie case of discriminatory termination, "Title VII plaintiffs must show that they were replaced by someone outside their protected class...." *Miles v. Dell,* 429 F.3d 480, 486 (4th Cir. 2005). The Fourth Circuit, however, has "recognized that 'there may be exceptions to this rule in limited situations,'" such as when the employer's hiring of another person within the protected class is calculated to disguise its act of discrimination. *Id.* (quoting *Brown v. McLean,* 159 F.3d 898, 905 (4th Cir. 1998)).

Alternatively, in cases of wrongful discharge as employee discipline, the Fourth Circuit has permitted the use of a modified *McDonnell Douglas* framework that examines how "comparator" employees were disciplined relative to the plaintiff. Plaintiffs may identify one or more such comparators of a different race, sex, color, religion, or national origin who were disciplined less harshly for engaging in similar conduct prohibited by the employer. *See generally Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008); *Moore v. City of Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir. 1985). The severity and nature of the plaintiff and comparator's respective offenses must be clearly established for the plaintiff to successfully pursue a claim of discrimination in this manner. *Lightner*, 545 F.3d at 265.

### a. Ms. Harris Has Not Made a Prima Facie Case for Discrimination

There is no dispute that Ms. Harris has met the first three elements of a prima facie discrimination claim: she is a woman, terminated from her job, who had—outside of the

---

[5] Unpublished cases are cited not for any precedential value but for the persuasiveness of their reasoning.

September 18-19 incident—maintained a suitable level of performance in her work for BSI. But she cannot satisfy the fourth element under either the traditional or comparator approach to her discrimination claim.

Ms. Harris does not dispute that her role was subsequently filled by a woman (ECF No. 30, Ex. 1 ¶ 9), nor does she offer evidence that this subsequent hiring was merely a calculated act by BSI to obfuscate the company's discriminatory action against her. Thus, she has not established a prima facie claim of discrimination under the traditional *McDonnell Douglas* framework.

In the alternative, Ms. Harris argues that BSI treated another comparator employee outside of her protected class better than herself. Specifically, she alleges that BSI treated Mr. Walker better than the company treated her by keeping him on staff with suspension despite his harassing behavior, his viewing of pornography in the workplace, and drunkenness on the job.[6] In support of this claim, Ms. Harris submits affidavits of her co-workers Jada Ellis ("Ms. Ellis") and Nicole Gibson ("Ms. Gibson"), who both attest to Ms. Harris informing them that she brought to BSI's attention the incident of Mr. Walker's harassment of her by text message on September 11, 2018. (*Id.*, Ex. C ¶ 6; Ex. H ¶ 4.) Only Ms. Gibson claims to have "witnessed" Ms. Harris bring her complaint of harassment to the attention of BSI's Human Resources department. (*Id.*, Ex. H ¶ 4.)[7] Additionally, Ms. Ellis attests to Ms. Harris speaking with Mr. Murry after the disparaging comment on September 1. (*Id.*, Ex. C ¶ 4.)

---

[6] BSI contends that Ms. Harris never specifically alleged Mr. Walker was an appropriate comparator. While it is the plaintiff's obligation to demonstrate that similarly-situated employees were not treated equally, *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 258 (1981), Mr. Walker's similar role as a janitor at the same worksite, whose alleged conduct arguably would be more severe than the conduct BSI alleges of Ms. Harris would meet these requirements. *See Lightner*, 545 F.3d at 265.

[7] BSI notes that Ms. Harris's request for video cannot be complied with because there was no recording device in the BSI housekeeping office at the Johns Hopkins Keswick worksite. (ECF No. 35, Ex. M ¶ 2; Ex. N ¶ 7.)

Significantly, other than the text message for which Mr. Walker apologized, the only claims of comparable behavior pled with any specificity–those of Mr. Walker's worktime drunkenness and viewing of pornography–are included only in Ms. Harris's response to BSI's motion for summary judgment and are not attested to in any affidavit or other admissible evidence. (ECF No. 33 at 9.) Because there is no proof that the relevant comparator engaged in similar or more serious activity prohibited by their employer, Ms. Harris has failed to support her claim of discrimination under the modified *McDonnell Douglas* framework.

### b. BSI's Non-Discriminatory Justification for Ms. Harris's Termination Has Not Been Sufficiently Rebutted

Even assuming Ms. Harris has met her burden of presenting a factually supported prima facie case, BSI has advanced a non-discriminatory justification for her termination that is not sufficiently rebutted to proceed past summary judgment.

Under step two of the *McDonnell Douglas* framework, BSI has articulated a non-discriminatory reason for its conduct at issue. *See Guessous*, 828 F.3d at 216. BSI asserts that sex played no part in BSI's decision to terminate Ms. Harris, but rather that her insubordinate conduct and behavior in violation of employee policies on September 19, 2018, was the sole cause of her termination. To support this contention, BSI provides Ms. Theodore's disciplinary form and incident report (ECF No. 30, Ex. E), affidavits from Ms. Theodore (*Id.*, Ex. 2), and Mr. Coleman (*Id.*, Ex. 3), Ms. Harris's acknowledgment of BSI's disciplinary policies (*Id.*, Ex. I), and records of Ms. Harris's unemployment benefits hearings (*Id.*, Ex. F; Ex. H). Together, these sources provide diverse and consistent accounts of Ms. Harris acting in a manner prohibited by her employer with the potential consequence of termination.

Conversely, Ms. Harris has not met her burden of providing sufficient evidentiary proof that her termination for insubordination was a pretext and that the true reason for BSI's action was discriminatory. Ms. Harris, in her Response to BSI's motion for summary judgment, asserts that BSI's rationale for her termination was pretextual for two reasons: first, that BSI provided inconsistent explanations for Ms. Harris's termination, and second, that her termination occurred only two days after she purported to tell BSI about Mr. Walker's harassment. Ms. Harris does not provide any other evidence of pretext or discrimination to bolster these arguments.[8]

Addressing the inconsistency argument first, while it is true that a jury may reasonably infer that a rationale is pretextual from contradictory or inconsistent accounts, BSI's rationale has not actually differed over time, as suggested by Ms. Harris. Rather, different accounts by the various individuals involved in the termination have highlighted distinct aspects of Ms. Harris's alleged inappropriate behavior in the September 19th incident. Unlike in *Wesley v. Arlington County*, 354 Fed. Appx. 775, 782 (4th Cir. 2009), a case Ms. Harris cites where a witness directly contradicted his prior rationale in subsequent testimony, BSI maintains in every filing and document the same set of occurrences: Ms. Harris reacting aggressively and raising her voice when confronted about her statements regarding her colleague's performance. (*See* ECF No. 30, Ex. E; Ex. 2 ¶¶ 4-6; Ex. 3 ¶ 4; Ex. F at 2; Ex. H at 2.) While Ms. Harris herself disputes that she acted confrontationally, BSI's rationale for her termination has remained consistent throughout.

Ms. Harris asserts as evidence of inconsistency that the incident report (ECF No. 30, Ex. E) does not reference Ms. Harris's "derogatory comments" or her throwing the trash can upon

---

[8] BSI notes that Ms. Harris never discussed scheduling depositions, producing a sparse record for the court to examine for evidence of the alleged pretext. Ms. Harris asserts she believed discovery was on hold pending mediation with Judge Copperthite, but there was no formal stay or evidence of one agreed upon by the parties. (ECF No. 22.)

11

returning to Ms. Theodore's office. All firsthand accounts of the incident and summaries of unemployment benefits hearings, however, directly reference Ms. Harris's disparaging comments and throwing the trashcan upon returning to Ms. Theodore's office. (ECF No. 30, Ex. 2 ¶¶ 4-6; Ex. 3 ¶ 4; Ex. F at 2; Ex. H at 2; Ex. N at 5.) Additionally, the incident report, a document Ms. Harris contends does not contain a reference to the trash can being thrown, in fact references Ms. Harris's "disorderly conduct on the job site #514" and that she "threw trash can @ Supervisor." (*Id.*, Ex. E.) As this version of events appears consistently across numerous documents, Ms. Harris has not shown the level of inconsistency that might prove pretext.

Second, Ms. Harris's argument that her termination's timing, two days after she purportedly reported Mr. Walker's termination to Ms. Theodore, is unpersuasive. While such suspicious timing could satisfy Ms. Harris's burden proving BSI's rationale for her termination is pretextual, she has proffered nothing other than timing, while BSI corroborates its non-discriminatory reason for termination with ample evidence stating Ms. Harris's termination was because of her insubordinate conduct. (ECF No. 30, Ex. 2 ¶¶ 4-6; Ex. 3 ¶ 4; Ex. F at 2; Ex. H at 2; Ex. N at 5.) Further, Ms. Harris's assertion that her termination was discriminatory is undermined by her failure to raise this concern at her unemployment benefit hearings. (ECF No. 33, Ex. H.) Without any supporting documentation or reasoning, the timing of Ms. Harris's termination on September 19 alone does not call into question BSI's stated, non-discriminatory reason for her termination.

As Ms. Harris has not met her burden under the third step of *McDonnell Douglas*, summary judgment will be granted with respect to claims I and IV.

**III.    Claims III and VI: Retaliation**

Title VII prohibits employers from discriminating against any individual because the individual has complained of, opposed, or participated in a proceeding about, prohibited discrimination. 42 U.S.C. § 2000e–3(a). Retaliation claims brought under Title VII are analogous to discrimination claims: a plaintiff may succeed either by providing direct evidence of retaliation or by satisfying the *McDonnell Douglas* burden-shifting framework. *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 336-38 (4th Cir. 2011); *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). Maryland courts use the same burden-shifting process applied in Title VII decisions to decide claims brought under the MFEPA. *Muse-Ariyoh v. Board of Educ. Of Prince George's Cty.,* 235 Md. App. 221, 242 (Md. Ct. Spec. App. 2017).

To state a prima facie case of retaliation under Title VII, Ms. Harris must show: (1) she engaged in a protected activity, (2) her employer took an adverse employment action against her, and (3) there was a causal relationship between the two events. *Boyer-Liberto v. Fontainebleau Corp.,* 786 F.3d 264, 281 (4th Cir. 2015) (quoting *EEOC,* 424 F.3d at 405-06).

### a.  Ms. Harris Has Not Proffered Direct Evidence of Retaliation

As with her claims of discrimination, Ms. Harris has not provided the court direct evidence of retaliation. Therefore, her claims must be analyzed under the *McDonnell Douglas* burden-shifting framework.

### b.  Ms. Harris Has Made a Prima Facie Case for Retaliation

Ms. Harris has offered limited, but sufficient, evidence to support the first element of a prima facie retaliation claim: engaging in protected activity. The activity she alleges–bringing workplace sexual harassment to the attention of her supervisor–clearly qualifies under Title VII and the MFEPA definitions of protected activity. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (holding an employee's complaints of sexual harassment by his

13

supervisor to other supervisors and ultimately to the manager of human resources were "protected activity" for purposes of a retaliation claim under Title VII). Ms. Harris claims that sometime after September 1, she informed her Area Manager, Mr. Murry, of Mr. Walker's verbal harassment. (ECF No. 33, Ex. F at ¶ 5), and that she spoke with Ms. Theodore about Mr. Walker's harassment of her over text on September 17, 2018 (*Id.* ¶ 9). The evidence Ms. Harris provides to prove that she put BSI on notice of Mr. Walker's verbal and text message harassment are her affidavit and the affidavits of Ms. Gibson and Ms. Ellis. (ECF No. 30 Ex. C; Ex. F ¶ 5, 9-11; Ex. H ¶ 4.)[9]

Second, Ms. Harris's termination on September 25 is clear evidence of the second element–adverse employment action, and third, her suspension two days after she alleges she brought Mr. Walker's harassment to the attention of Ms. Theodore is sufficiently close in time to meet the third element.

As BSI's evidence is disputed and Ms. Harris provides at least some proof of each element of her claim, Ms. Harris has adequately factually supported her prima facie case of retaliation.

### c. BSI's Non-Retaliatory Justification for Ms. Harris's Termination Has Not Been Sufficiently Rebutted

---

[9] The text screenshots Ms. Harris attributes to Mr. Walker speak to the fact of the harassment, but not to Ms. Harris's claim that she informed Ms. Theodore about them. (*Id.*, Ex. G at 9-11.) BSI presents substantial evidence contesting Ms. Harris's version of events: BSI denies being informed of Mr. Walker's harassment at any time, and that Ms. Harris "never raised any employment claims with BSI." (ECF No. 33, Ex. E at 22; ECF No. 35, Ex. M ¶ 5.) Through Ms. Theodore's affidavit, BSI attests that Ms. Ellis never worked at the Johns Hopkins workplace, and Ms. Theodore never personally saw Ms. Gibson working with Ms. Harris at any worksite including Johns Hopkins. (ECF No. 33, Ex. H ¶¶ 8-9.) Mr. Murry denies that Ms. Harris spoke to him about Mr. Walker's original inappropriate workplace comment during her employment at BSI. (ECF No. 35, Ex. M ¶ 5.) Similarly, Ms. Theodore attests that she was not informed by Ms. Harris of Mr. Walker's conduct until after Ms. Harris's termination. (ECF No. 30, Ex. 2 ¶ 7.) BSI has provided the company's harassment policy, which includes the proper procedures for reporting harassment, and proof of Ms. Harris's acknowledgment of the policy. (ECF 30, Ex. D; Ex. L.) As the court, in reviewing a motion for summary judgment, must view all evidence in the light most favorable to the non-moving party, *Tolan*, 572 U.S. at 657, this evidence does not prevent Ms. Harris from adequately presenting a prima facie case of retaliation.

BSI has, however, provided a non-discriminatory rationale for terminating Ms. Harris—her behavior in violation of employee policies on September 19, 2018 —while Ms. Harris has failed to offer sufficient evidence that BSI's stated reason was a pretext for retaliation. As discussed with respect to her claims of discrimination, Ms. Harris's only contentions that BSI's stated reason for termination was pretextual are alleged inconsistencies in BSI's proffered rationale and the proximity in time of the termination to when Ms. Harris purports to have spoken to BSI about the harassment. The court will grant BSI's motion for summary judgment, as Ms. Harris has not cast sufficient doubt upon the genuineness of the explanation to warrant a jury's consideration of possible retaliatory motivations for the firing.

## CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment will be granted. A separate Order follows.


___9/29/21_____                              _____/s/_____
Date                                            Catherine C. Blake
                                                United States District Judge